**COMP**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #204
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Chattahlaw@gmail.com
Attorney for Plaintiff
*Vem Miller*

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| VEM MILLER, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>COUNTY OF RIVERSIDE, a public entity;<br>RIVERSIDE COUNTY SHERIFF'S<br>DEPARTMENT; SHERIFF CHAD BIANCO, in<br>his individual and official capacities; DEPUTY<br>CORONADO ID #5731; and DOES 1 through 10,<br>individually, jointly and severally<br>                    Defendants. | **CASE NO.:**<br><br>**COMPLAINT FOR DAMAGES**<br>1.  42 USC §1983<br>2.  Failure to Train<br>3. Municipal Liability Ratification<br>4. Supervisor Liability<br>5. Deprivation of Rights<br>6. Intentional Infliction of Emotional<br>   Distress<br>7. Defamation<br>8. Invasion of Privacy- False Light<br><br>**[DEMAND FOR JURY TRIAL]** |

## COMPLAINT

COMES NOW, Plaintiff, VEM MILLER, who brings this action by and through the

undersigned attorney of record SIGAL CHATTAH, ESQ. of CHATTAH LAW GROUP, and

hereby complains and alleges against Defendants as follows:

## INTRODUCTION

This civil rights action under 42 USC §1983 seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the unlawful seizure and distribution of private information obtained in violation of Plaintiff's constitution rights.

This Complaint alleges that police officers employed by the County of Riverside violated Miller's First and Fourth Amendment Constitutional rights to privacy and to be free from unlawful searches and seizures.

The evidence will establish that the officers were trained to act in precisely the manner they acted and, thus, were trained to do precisely the wrong thing. If the officers had been properly trained in the fundamental principles of search and seizure and safekeeping private information, this incident would not have happened. In short, the officers' actions were contrary to proper police practices. Riverside police practices were diametrically opposed to proper police procedures, out of synch with the rest of the police profession, malicious, and plainly unconstitutional.

Riverside police engaged in deliberate and wrongful conduct and compromised police protocol violating Miller's constitutional rights for the purpose of promoting and engaging in a meritless and gratuitous sensational story.

## JURISDICTION AND VENUE

1.      This action arises under Title 42 of the United States Code ("U.S.C.," 42 U.S.C. §1983 and §1988). Jurisdiction is conferred upon this Court by Title 28 U.S.C §1331.

2.      Venue is proper in the District of Nevada pursuant to 28 U.S.C. §1391(b) because Plaintiff is a resident of the County of Clark, Nevada, which is within this judicial district.

**THE PARTIES**

3.      Plaintiff VEM MILLER, (hereinafter, "Miller"; Plaintiff, *inter alia*) is a resident of Las Vegas, Nevada, who at all times relevant herein was a member of the press.

4.      Defendant County of Riverside ("Riverside") is a municipal governmental entity duly incorporated under the laws of the State of California. Under its authority, Defendant Riverside County operates the Riverside County Sheriff's Department (hereinafter "RCSD" *inter alia*), and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the employees of RCSD.

5.      Defendant CHAD BIANCO, (hereinafter "Bianco") is and was, at all times relevant herein, the Sherrif of Riverside County with RCSD. Bianco was personally involved in the acts that deprived Miller of his particular rights and to be free from deliberate indifference, causing his damages. Bianco at all relevant times hereto, was acting under color of state law, and is sued in his individual capacity.[12]

6.      Defendant Deputy Coronado, (hereinafter "Coronado") is a police officer with Riverside Sheriff's Office at all times relevant, was employed by the RCSD. Coronado was personally involved in the acts that deprived Miller of his particular rights and to be free from deliberate indifference and caused his damages. Coronado at all relevant times hereto, was acting under color of state law, and is sued in his individual capacity.

7.      Plaintiff is, at the time of the filing of this Complaint, ignorant of the true names and capacities of Defendants Does I-X, and, therefore sue these Defendants by such fictitious

---

[1] It is significant to note that Defendants RCSD and Bianco have been riddled with claims of inadequate medical safety, a pattern and practice of negligence, and scrutiny for significant rise in inmate deaths demonstrating a severe lack of oversight within the Department. It is believed that Sheriff Bianco is currently under investigation by California Attorney General (California Department of Justice) Rob Bonta for egregious mishandling of the Riverside Sheriff's Department.

[2] Defendants' Department has been identified by the National Police Scorecard as particularly likely to use deadly force relative to the number of arrests made.

names. Plaintiff is informed and believes and thereon alleges that Defendants Does I-X were employed by the RCSD at the time of the conduct alleged herein. Plaintiff alleges Defendants Does I-X violated Miller's civil rights by their deliberate indifference to his privacy and profession and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct. Plaintiff will seek leave to amend his Complaint to state the names and capacities of Defendants Does I-X, when they are identified and ascertained. Does I-X, at all relevant times hereto, were acting under color of state law, and are sued in their individual capacity.

8.      Plaintiff alleges that the conduct of each Defendant deprived Miller of his constitutional right to privacy and to be free from unlawful searches and seizures.

9.      Each of the Defendants caused, and is responsible for, the unlawful conduct directed towards Miller. Each of the Defendants, by participating in the unlawful conduct, or acting jointly and in concert with others who did, authorized, acquiesced, condoned, and approved the unconstitutional conduct by failing to take action to prevent said unconstitutional conduct which resulted in the financial ruin, humiliation and destruction of Miller's life and livelihood.

10.     Wherever reference is made in this Complaint to any act by Defendants, it is alleged that each Defendant was the agent of the others. Defendants were acting within the course and scope of this agency, and all acts alleged committed by any one of them shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

## PRELIMINARY STATEMENT

11.     This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in

connection with the search and seizure of Plaintiff's assets, the violations of his right to privacy and the willful destruction of his reputation and financial well-being.

12.     This is an action brought under 42 U.S.C. §1983 and the laws of the State of Nevada, to hold the RCSD, and the COUNTY OF RIVERSIDE, via its policymaker, Defendant Bianco and others, and two of its officers accountable for their unreasonable, unlawful, malicious violations of the Plaintiff's rights.

13.     On October 12, 2024, Plaintiff Vem Miller was in Riverside County to attend a rally for Presidential candidate Donald J. Trump at the Coachella Valley festival.

14.     Miller, a Las Vegas, Nevada resident, was a lawful owner and in lawful possession of two firearms in his vehicle; a 1) Glock 19 handgun; and 2) shotgun.[3]

15.     At approximately 15:00 hrs., as Miller approached the 52nd Street parking lot to enter the parking lot, approximately half a mile away from the venue of the rally, Miller disclosed to the guarding Riverside County Police Officer that he had two firearms in his vehicle, he intended to leave in the parked vehicle.

16.     The Officer flagged Miller to pull his vehicle aside which Miller complied with said order.

17.      A second police officer at the scene instructed Miller to get out of his vehicle, which he complied with.

18.     Miller was immediately handcuffed and placed in a RCSD patrol unit vehicle.

19.     Miller disclosed to the officer that he is prediabetic and has a medical condition.

20.     Officer Coronado, requested permission to retrieve the firearms to verify their serial numbers and Miller's lawful ownership of same.

---

[3] It is significant to note that there is no state permit required to purchase, possess or carry a shotgun, rifle or handgun in Nevada. Nevada state law permits open carry.

21.     Officer Coronado then proceeded to conduct an unlawful and unconstitutional search of all compartments of the vehicle, retrieving Miller's personal documentation and other personal items.

22.     After hours of sitting in the patrol unit, Miller requested to relieve himself, which he was denied.

23.     At approximately 19:00 hrs., Miller was transported to Thermal Police Station for agents from Federal Bureau of Investigation and United States Secret Service to interrogate him.

24.     After 25 minutes of meeting with Officer Coronado, neither agents from the Federal Bureau of Investigation or United States Secret Service were interested in interviewing Miller and departed from Thermal Police Station. Again, neither agents interviewed Miller.

25.     Thereafter, Miller was transported to John Benoit Detention Center arriving at same at approximately 20:30 hrs.

26.     Miller was released after posting a $5,000.00 bail at approximately 01:30 October 13, 2024 with the following state charges:

| 25850(A) | MISD | CARRYING/LOADED FIREARM | 00005000 | CITE | PC |
|----------|------|-------------------------|----------|------|-----|
| 32310(A) | MISD | LARGE CAPACITY MAGAZINE | 00005000 | CITE | PC |

27.     Miller has a January 2, 2025 return date for his first appearance at Indio Larson Justice Center on said charges.

28.     Immediately after Miller's arrest, Defendant Bianco did not miss an opportunity to fabricate allegations against Miller, going on numerous news outlets, claiming to have thwarted a third assassination attempt against Presidential Candidate Donald J. Trump.

29.     Defendant Bianco, knew that Miller was not charged with any wrongdoing concerning assassination attempts, and that United States Secret Service and FBI agents even declined to interview him.

30.     It became clear that Bianco, intentionally, maliciously and with a blatant disregard for the truth, wanted to create a narrative so as to be viewed as a "heroic" Sheriff who saved Presidential candidate Trump from a third assassination attempt.

31.     On October 13, 2024, Defendant Bianco conducted press conferences making preposterous allegations against Miller including the following:

- Miller had multiple fake passports and fake driver licenses with different names;

- Miller was a member of a sovereign citizens group;

- The interior of the vehicle was in disarray;

- Miller showed up with an unlicensed, unregistered vehicle with fake plates;

- Weapons and ammunition with all the monstrous red flags of intent to assassinate the President;

- Miller presented a fake VIP and press passes at the check point; [4]

- Bianco prevented another assassination attempt on the President;

32.     Even after being notified by both United States Secret Service and Federal Bureau of Investigation that they did not believe Miller was a threat and declined to interview him, Defendant Bianco, continued to make preposterous allegations against Miller, holding press conferences perpetuating his delusional and false narrative.[5]

---

[4] This is perhaps, the most egregious allegation, since Miller was actually provided expedited special entry passes by the Trump 47 campaign directly.
[5] It is also significant to note that Defendant Bianco currently has allegations against him that his department schemed to falsify required reports to California Department of Justice, misclassifying incarcerated who died as being sentenced. In 2022 alone, 18 inmates died in the custody of the RCSD, kicking off investigations thereon.

33.     In fact, Miller, a registered Republican in Nevada, is a member of the Clark County Republican Party, Central Committee.

34.     During the Nevada GOP 2024, Presidential Caucus, Miller served as a Trump Caucus Captain.

35.     Miller is informed and thereon believes and alleges that upon realization that none of the allegations, Defendant Coronado made against him, neither United States Secret Service or the Federal Bureau of Investigation had any concerns about the veracity of Miller's statements.

36.     Instead of apologizing to Miller for the false accusations made against him, Defendant Bianco compounded Defendants; misconduct, perpetuated a boisterous and delusional narrative that has caused irreparable harm to Miller's character and reputation.

37.     Defendant Bianco's acts of holding repeated press conferences perpetuating a false narrative against Miller continues to shock the conscience and exceed the bounds of decency.

38.     As delineated *infra*, Miller's acts were protected under the First Amendment Right to Privacy, Free Speech and Right to Petition.

**FIRST CLAIM FOR RELIEF**
**42 USC § 1983**
**Violation of First Amendment Right to Privacy, Speech and Petition**
**(All Defendants)**

39.     Plaintiff repeats and realleges all prior paragraphs of this Complaint and incorporates the same by reference herein.

40.     A person has a privacy interest in avoiding the public disclosure of personal matters. *See In re Crawford, 194 F.3d 954, 948-49 (9th Cir. 1999)*.

41.     Defendants without any legitimate purpose disclosed Miller's identity, made preposterous allegations against him, placing him in false light, despite the fact that Miller, had not committed any crimes associated with the allegations made in nationwide news conferences.

42.     The right to engage in anonymous political conduct is a cornerstone of liberty. *See McIntyre v Ohio Elections Comm'n, 514 U.S. 334, 314-342 (1995)* (recognizing that anonymity for fear of official retaliation implicates First Amendment concerns and protections).

43.     The First Amendment protects against the disclosure of associational memberships absent a compelling state interest. *NAACP v. Alabama, 357 U.S 449 (1958); accord Int'l Bhd. Of Teamsters, Airline Div. v Allegiant Travel Co., No. 2:14-CV-000043-APG, 2014 WL 6069851, at \*8 (D. Nev. Nov. 12, 2014)*

44.     Accordingly, Defendants and each of them are liable to Plaintiff's for compensatory damages.

45.     Plaintiff also seeks statutory attorney fees and costs under this claim.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983 –**
**Failure to Train**
**(As Against County of Riverside and RCSD)**

46.     Plaintiff repeats and realleges all prior paragraphs of this Complaint and incorporates the same by reference herein.

47.    The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV; see also Carpenter v. United States, 138 S. Ct. 2206, 2214 (2018)* ("[T]he Amendment seeks to secure 'the privacies of life' against 'arbitrary power.'" (quoting *Boyd v. United States, 116 U.S. 616, 630 (1886))).*

48.    It is firmly established that searches or seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Brown, 996 F.3d 998, 1004 (9th Cir. 2021).*

49.    Defendants conducted an unlawful search of all compartments of Miller's vehicle, thereafter towing it and holding it in impound in Riverside County thereby depriving him of the rights and liberties secured to him by the Fourth and Fourteenth Amendments.

50.    RCSD officers routinely deal with search warrants, criminal laws, and probable cause.

51.    RCSD officers routinely deal with the requirements of search warrants and the need for probable cause to have said warrants issued.

52.    RCSD officers understand the ramifications of engaging in unlawful and warrantless searches and seizures.

53.    RCSD is and at all times has been on notice that they must provide proper training to its officers obtaining search warrants and issuance of warrants.

54.    RCSD is and at all times has been on notice that it must not publicly disclose information of private citizens engaged in lawful conduct so as to embarrass and humiliate said persons.

55.     RCSD is further aware of its need to supervise, train, and discipline its officers concerning compliance with established police policies, practices and guidelines regarding safekeeping of evidence seized during the course and scope of an investigation.

56.     RCSD is and has been aware that its officers have engaged in numerous officer violations involving unconstitutional searches and seizures and warrants issued without probable cause, which could have been reasonably avoided had its officers employed nationally accepted police tactics and techniques.

57.     Yet despite this knowledge RCSD has done nothing to train its officers in such nationally accepted police tactics and techniques, to discipline them for their failures, or to hold them accountable for their gross violations.

58.     RCSD's custom and practice of turning the other way when officers violate individual rights, engaging in unlawful searches and seizures, and refusal to discipline involved officers and/or employ additional training, ensures the likelihood of repeat situations and continuous violations of the rights of citizens.

59.     RCSD's failure to provide proper training represents a policy for which Riverside County is responsible and for which Riverside County is liable.

60.     RCSD's inadequate training demonstrates deliberate indifference on the part of RCSD towards Miller, and others similarly situated, with whom police officers will routinely come into contact.

61.     In the course and scope of the investigation and dissemination of fabricated statements about Miller, Defendants Coronado, Bianco and others, either failed to follow their training or they were improperly trained in how to achieve a complete investigation and ensuring that Miller's rights as a citizen remain protected.

62.     RCSD's failure to train and supervise Defendants Bianco and Coronado caused the humiliation and economic loss to Miller and was at all times the moving force in Miller's humiliation and economic suffering.

63.     As a direct and proximate result of RCSD's failures, Miller suffered, severe emotional distress, mental anguish, humiliation and even economic loss as a result of his interactions with Defendants.

64.     The conduct alleged herein was done in reckless disregard of Miller's constitutionally protected rights; justifying an award of punitive damages as against the individually named Defendants.

65.     RCSD's failure to train Defendants Bianco and Coronado and other DOE officers resulted in the intentional, reckless, and callous disregard for the life of Miller and his constitutional rights.

66.     The actions of Defendants Bianco and Coronado were willful, wanton, oppressive, malicious, and unconscionable to any person of normal sensibilities.

67.     Accordingly, Defendants and each of them are liable to Plaintiff for compensatory damages.

68.     Plaintiff also seeks statutory attorney fees and costs under this claim.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. §1983 –**
**Municipal Liability—Ratification**
**(As Against County of Riverside)**

69.     Plaintiff repeats and realleges all prior paragraphs of this Complaint and incorporates the same by reference herein.

70.     A ratification theory may be established in two ways: 1) based on a "pattern" of ratification that constitutes a practice or custom, or (2) based on a single act by an official with

policy making authority.

71.     Upon information and belief RCSD ratifies all excessive actions of its police officers.

72.     Policymakers for County of Riverside, have vigorously defended the County's police officers for engaging in astonishing manner of action and unlawfully seized information of Miller and the unlawful malicious misrepresentations about him.

73.      Upon information and belief, policy makers at the RCSD have a custom and practice of failing and/or refusing to discipline officers involved in systematically and unlawfully seizing evidence and engaging in unconstitutional acts.

74.      Upon information and belief, policy makers at the RCSD have a custom and practice of improperly and systematically justifying violations of search and seizure rights that are in fact unjustifiable.

75.     Upon information and belief, policy makers at the RCSD have failed to thoroughly investigate many of its officer search and seizure violations and have a custom and practice of failing to take remedial steps after such violations.

76.     Upon information and belief, County of Riverside and RCSD have ratified, condoned, approved, and encouraged the use of warrantless searches and seizures by its officers.

77.     County of Riverside was deliberately indifferent to the rights of Miller to be free from unlawful searches and seizures, and protected from malicious lies in violation of his right to privacy.

78.     The County of Riverside engaged in the deliberate indifference and misconduct of its employees.

79. As a direct result of the County of Riverside's longstanding customs and practice of deliberate indifference to Miller's constitutional rights, and rights of others so situated, it was deliberately indifferent to a substantial risk of serious harm, embarrassment and humiliation of Miller.

80. The unlawful and illegal conduct of Defendant County of Riverside, its policies, procedures, customs, and practices, deprived Miller of the rights, privileges and immunities secured to him by the Constitution of the United States and federal statutory law.

81. As a direct, proximate and foreseeable result, Plaintiff suffered damages in an amount according to proof at the time of trial.

82. Accordingly, Defendants and each of them are liable to Plaintiff for compensatory damages, punitive damages, and attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. §1983 –
### Violation of the 4th Amendment of the United States Constitution
### (All Defendants)

83 Plaintiff repeats and realleges all prior paragraphs of this Complaint and incorporates the same by reference herein.

84. Defendants Bianco and Coronado, while acting under the color of the law, violated Miller's constitutional rights by unreasonably seizing Miller's personal property, fabricating lies and using said information to embarrass and disseminate private information about him, so as to destroy his livelihood and humiliate him professionally.

85. Defendants' actions violated the constitutional rights guaranteed to Miller by the Fourth and Fourteenth Amendments of the United States Constitution.

86. Defendants' actions were not made in good-faith and were in violation of clearly established law.

87.     Defendants intentionally, knowingly and with a wanton disregard for Miller's constitutional rights used the media to spin a false and malicious narrative and unlawfully disclosed and disseminated said information for the purposes of humiliating him and destroying his livelihood.

88.     Defendants' actions were unnecessary, unreasonable, unlawful, and unjustified.

As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, severe emotional distress, mental anguish, embarrassment and humiliation.

89.     Because Defendants' actions, and possibly other employees, agents, and/or representatives of the Riverside Police Department, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

90.     As a direct, proximate and foreseeable result, Plaintiff suffered damages in an amount according to proof at the time of trial.

91.     Accordingly, Defendants and each of them are liable to Plaintiff for compensatory damages, punitive damages, and attorney's fees and costs.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. §1983 –**
**Failure to Intervene in Violation of the 4th Amendment of the United States**
**Constitution**
**(All Defendants)**

92.     Plaintiff repeats and realleges all prior paragraphs of this Complaint and incorporate the same by reference herein.

93.     The Sheriff of the RCSD is the "policymaker" with respect to RCSD, as a law enforcement agency. *See e.g., Revene v. Charles County Comm'rs, 882 F. 2d 870, 874 (4th Cir. 1989).*

94.     Municipal liability can attach under *Monell v. Department of Social Services, 436 U.S. 658 (1978),* for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Case 1:20-cv-00135-TSK 18 Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).* If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. *See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).*

95.     Defendant Bianco, as the chief of police and policymaker for the RCSD has a custom, pattern, practice, and/or procedure of hiring police officers who he knows have committed acts of constitutional violations and/or have a propensity to do so.

96.     When these officers inevitably commit acts of violations while working for the RCSD, Defendant Bianco would ratify their unconstitutional acts and assist in covering up the officer's bad actions by charging members of the community, who fall victim to these officers, of crimes.

97.     In the instances cited above, no person or law enforcement officer was in imminent danger and no exigent circumstances existed to engage in such unconstitutional conduct.

98.     Defendant Bianco had a duty to intervene when Defendants Coronado and others were violating Miller's constitutional rights, which resulted in excessive search, unlawful seizure and humiliation and unmasking of Miller.

99.     Defendant Bianco observed and/or had reason to know that violation of Miller's rights against unlawful search and seizure were being inflicted without a legitimate goal or justification.

100.     Defendant Bianco had the opportunity and means to prevent the unlawful search and seizure and subsequent disclosure of Miller's information and identity, and/or additional violations of Miller's constitutionally protected rights from occurring.

101.     Not only was Defendant Bianco deliberately indifferent to Defendant Coronado and others' unconstitutional searches and seizures, and subsequent actions, he encouraged and ratified it.

102.     "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. An officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

103.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation.

104.     Because the Defendants' actions, and possibly other employees, agents, and/or representatives of the RCSD, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

105.     As a direct and proximate result of the RCSD's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.

106.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, severe emotional distress, mental anguish, embarrassment and humiliation.

107.     Pursuant to *Monell v. Department of Social Services of New York, 436 U.S. 658 (1978)*, the County of Riverside and the RCSD, through its policymaker, Defendant Bianco (and possibly other policymakers whose identities are not yet known) are liable for the harms and losses sustained by Miller.

### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. §1983 –
### Failure to Train/Negligent Training/Supervision/Retention
### (As Against RCSD)

108.     Plaintiff repeats and realleges all prior claims for relief of this Complaint and incorporates the same by reference herein.

109.     Defendants used unlawful means to deprive Miller access to medical care, thereby depriving him of the rights and liberties secured to him by the Fifth and Fourteenth Amendments.

110.     RCSD's failure to train and supervise Defendants caused the humiliation and economic loss to Miller and was at all times the moving force in Miller's humiliation and economic suffering.

111.    As a direct and proximate result of RCSD's failures, Miller suffered, severe emotional distress, mental anguish, humiliation and even economic loss as a result of his interactions with Defendants.

112.    The conduct alleged herein was done in reckless disregard of Miller's constitutionally protected rights; justifying an award of punitive damages as against the individually named Defendants.

113.    RCSD's failure to train Defendants resulted in the intentional, reckless, and callous disregard for the life of Miller and his constitutional rights.

114.    The actions of Defendants were willful, wanton, oppressive, malicious, and unconscionable to any person of normal sensibilities.

115.    Accordingly, Defendants and each of them are liable to Plaintiff for compensatory damages.

116.    Plaintiff also seeks statutory attorney fees and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**
**42 U.S.C. §1983 –**
**Vicarious Liability**
**(Against the County of Riverside)**

117.    Plaintiff repeats and realleges all prior claims for relief of this Complaint and incorporates the same by reference herein.

118.    The negligence, carelessness, and wrongful acts of its employees, Defendants, and other Doe parties, ae imputed to the State of Nevada. The County of Riverside is vicariously liable for the negligence, carelessness, and wrongful acts of its employees.

119.    The injuries to Miller were caused by the negligence, carelessness, and wrongful acts of DOE Defendants.

120.    As a direct and proximate result of the negligence, carelessness, and wrongful acts of its employees, County of Riverside is liable to each of the Plaintiffs for damages, which greatly exceed $75,000.00.

## EIGHTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

121.    Plaintiff repeats and realleges all prior paragraphs of this Complaint and incorporates the same by reference herein.

122.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, loss of income, severe emotional distress, mental anguish, embarrassment and humiliation.

123.    The actions of Defendants against the Plaintiff were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## NINTH CLAIM FOR RELIEF
### Defamation
### (Against all Defendants)

124.    Plaintiff repleads and realleges all of the paragraphs in the preceding Claims for Relief and incorporates the same by reference as if fully set forth herein.

125.     That Defendants made false statements of fact about Miller and the incidents as they occurred on October 12, 2024 blatantly lying about the incident.

126.     That Defendants made unprivileged publication of the statements to members of the local and national media.

127.     That the statements were made intentionally, negligently, and with a reckless disregard for the truth or veracity of said statements.

128.     As a result of the false statements, Millers's reputation was and remains damaged.

129.     That it has been necessary for Plaintiff to retain the services of legal counsel for which Plaintiff is entitled to recover such costs and expenses from Defendant.

**TENTH CLAIM FOR RELIEF**
**Invasion of Privacy- False Light**
**(Against All Defendants)**

130.     Plaintiff repleads and realleges all of the paragraphs in the preceding Claims for Relief and incorporate the same by reference as if fully set forth herein.

131.     Defendants intentionally, wrongfully and selectively disclosed false facts about Miller so as to paint a false picture of him regarding the October 12, 2024 incident, severely distorting the truth and veracity of the events on said day.

132.     Defendants gave publicity to a matter concerning Miller that placed the plaintiff before the public in a false light.

133.     That the deliberate and malicious portrayal of Miller in false light would be highly offensive to a reasonable person.

134.     Defendant had knowledge of and acted in reckless disregard as to, the falsity of the publicized matter and the false light in which the plaintiff would be placed.

135.    That all of Defendant's acts regarding the dissemination of the disclosed facts were done with malice and wanton and reckless disregard for the truth.

WHEREFORE, Plaintiff, Vem Miller, demands judgment against the Defendants for:

a) Compensatory damages for all past and future economic losses and expenses incurred by the Plaintiff as a result of the Defendants' misconduct;

b) General damages for all past and future physical pain, mental suffering, and emotional distress suffered by the Plaintiff;

c) Punitive damages to the fullest extent permitted by law;

d) Pre-judgment and post-judgment interest;

e) Declare that the Defendants' acts, taken in their official capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

f) Declare that the Defendants' acts, taken in their individual capacities, as alleged above, violate the First and Fourth Amendment to the United States Constitution;

g) Immediately terminate Defendant Coronado employment relationship with the RCSD, without severance;

h) Enjoin Defendants from engaging in hiring practices that result in the hiring of police officers without proper vetting or review

i) Order the Defendants to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

j) Costs incurred in this action and reasonable attorney fees under 42 U.S.C. §1988; and

k) Such other further specific and general relief as may become apparent from discovery as this matter matures for trial.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated this __15th__ day of October, 2024.

CHATTAH LAW GROUP

*/s/ Sigal  Chattah*
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #204
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
Attorney for Plaintiff
*Vem Miller*